UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL F. FAGAN,

              Plaintiff,

vs.                                Case No.  2:04-cv-494-FtM-33SPC

CITY OF MARCO ISLAND, A. WILLIAM
MOSS, and ROGER REINKE

              Defendants.

------------------------------------

## ORDER

This matter comes before the Court on motions to dismiss filed
by Defendant City of Marco Island (Doc. #15) and Defendants Moss
and Reinke (Doc. #16) on October 28, 2004.  On November 15, 2004,
the Plaintiff filed memoranda in opposition to the motions to
dismiss (Docs. ##23 and 24).  Upon review of the motions to dismiss
and the memoranda in opposition, the Court finds that the motions
to dismiss should be granted.


I.    **BACKGROUND**

On October 5, 2004, Plaintiff Michael Fagan filed a complaint
(Doc. #1) against the City of Marco Island, Florida, as well as A.
William Moss and Roger Reinke, individually, under 42 U.S.C. §1983
for violations of Fagan's constitutional rights of freedom of
speech and freedom of association.

The complaint alleges as follows.  On or about January 1,
2004, Fagan came upon a vehicle engulfed in flames while he was on

routine patrol as a police officer for Marco Island. (Doc. #1 at ¶8 and ¶16.) Fagan called for back-up law enforcement, worked the initial scene, and was later advised of the subsequent investigation. (Doc. #1 at ¶10.) The investigation revealed that a 15 year old boy was drinking at a party, took a vehicle which did not belong to him, wrecked it, and fled the scene of the accident. (Doc. #1 at ¶9.)

The attorney retained to represent the boy was a City Councilman for Marco Island. (Doc. #1 at ¶¶11-12.) Fagan alleges that the attorney advised the case agent that had gone to interview the boy that the boy should only be charged with leaving the scene of the accident and that Moss, City Manager for the City, and Reinke, Police Chief for the City, confirmed the charge. (Doc. #1 at ¶13.) The investigation was closed, and the boy was charged with the single violation and release on a summons. (Doc. #1 at ¶14.)

On or about February 14, 2004, Fagan ran into Frank Pollara, a convicted felon who was also Fagan's prior employer. (Doc. #1 at ¶16.) Pollara advised Fagan that Pollara's daughter heard a boy at school bragging that he stole a car, wrecked it leaving it to burn, and then only received a ticket for leaving the scene of an accident because his family was "connected." (Doc. #1 at ¶17.) Fagan advised Pollara that he had been the initial officer at the scene and that Pollara could request a copy of the police report

2

because it was a public record.   (Doc. #1 at ¶18.)   Pollara requested and subsequently received a copy of the report pursuant to Florida's public records law and thereafter wrote a letter alleging police misconduct and a "cover up."   (Doc. #1 at ¶¶19-20.)

Fagan was later advised that he was under investigation for associating with Pollara, a convicted felon.   (Doc. #1 at ¶21.) The investigation into Fagan's conduct concluded that Fagan associated with a convicted felon, revealed department information to a convicted felon, did not respond truthfully during an interview conducted pursuant to an internal investigation, and revealed facts of a police investigation to a convicted felon. (Doc. #1 at ¶22.)   Fagan's employment with the Marco Island police department was terminated on or about June 3, 2004.   (Doc. #1 at ¶23.)

Fagan claims that the moving force behind the termination of his employment was the portion of subsection 14.3.10 of the City of Marco Island Public Safety Department General Order 14 governing conduct, which provides: "Association with Known Criminals-Do not intentionally associate with known criminal offenders or persons engaged in criminal activity, except as an official duty." (Doc. #1 at ¶¶24-25.)   Fagan asserts that such restriction violates his freedom of speech and freedom of association.   (Doc. #1 at ¶26.)

Fagan also claims that the City acted in violation of his constitutional rights of free speech and freedom of association by

3

terminating Fagan's employment for advising a citizen that he could obtain a copy of the police report under the public records laws. (Doc. #1 at ¶29.)   In addition, Fagan alleges that Moss and Reinke "acted in deliberate indifference and reckless disregard of Fagan's rights to freedom of association and free speech" by terminating Fagan's employment.   (Doc #1 at ¶¶42-44.)

Moss and Reinke moved to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, based on qualified immunity.   Moss and Reinke argue that their alleged role in termination of Fagan's employment did not violate any clearly established constitutional rights of which a reasonable person would have known.   (Doc. #19 at 2.)

The City also moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   The City argues that the First Amendment does not recognize an associational interest between criminals and police officers.   (Doc. #15 at 4.)   The City also argues that the restrictions embodied in the Policy are reasonable restrictions on the First Amendment rights of police officers and such restrictions are similar to those restrictions on employees of law enforcement agencies the Eleventh Circuit has upheld.   (Doc. #18 at 3.)

## II.  Standard of Review

In deciding a motion to dismiss, the Court accepts the facts

4

of the complaint as true and views them in the light most favorable to the non-moving party. See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). Dismissal of a count for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 75 Acres, LLC v. Miami-Dade County, Fla., 338 F.3d 1288, 1293 (11th Cir. 2003)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Defendants Moss and Reinke have raised the defense of qualified immunity, as they have been sued in their individual capacities under 42 U.S.C. § 1983. The qualified immunity defense completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003). Because questions of qualified immunity must be resolved at the earliest possible stage in litigation, Gonzalez, 325 F.3d at 1233 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)), qualified immunity may be decided on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure where the complaint "fails to allege the

violation of a clearly established right." Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).

A right is clearly established where the law has been concretely developed in such a way that all reasonable actors, serving in the place of the defendant, would recognize their actions as violating federal law. Harris v. Coweta County, Ga., 21 F.3d 388, 393 (11th Cir. 1994)(citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). When evaluating qualified immunity, courts "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999). "If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff has failed to allege the violations of a 'clearly established' right." GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998). Therefore, in order to survive the motions to dismiss, Fagan must have alleged a violation of his constitutional rights. Conn, 526 U.S. at 290.

## III. ANALYSIS

### A. Freedom of Speech

While a government employer cannot retaliate against a government employee for engaging in speech constitutionally

6

protected by the First Amendment, <u>Rankin v. McPherson</u>, 483 U.S. 378, 383 (1987), the government has an interest as an employer in regulating the speech of its employees and therefore must attempt to balance the competing interests of the public employee and the government. <u>Stanley v. City of Dalton, Ga.</u>, 219 F.3d 1280, 1288 (11th Cir. 2000)(citing <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968)).

To determine whether a governmental actor has retaliated against an employee because of the employee's protected speech, courts use a four-pronged test based on the Supreme Court's decision in <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968). <u>Chesser</u>, 248 F.3d at 1122. First, courts consider whether the employee's speech is on a matter of public concern. <u>Id.</u> If it is, courts then apply the <u>Pickering</u> balancing test, which weighs the employee's First Amendment interest in engaging in the speech against the employer's interest in prohibiting the speech in order to promote the efficiency of the public services it performs. <u>Id.</u>

If the employee's interests outweigh those of the employer, courts then examine whether the employee's speech played a substantial part in the employer's decision to demote or discharge the employee. <u>Id.</u> Finally, if the speech played a substantial part in the employer's decision, courts examine whether the employer has shown by a preponderance of the evidence that it would have demoted or discharged the employee regardless of the protected

conduct.  Id.

Speech addresses a matter of public concern if it relates to "any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Although police reports reflect information of general public interest and any information concerning police conduct and public safety could be considered to reach matters of public interest, such information is not necessarily of "public concern" for First Amendment purposes. Morris v. Crow, 142 F.3d 1379, 1381 (11th Cir. 1998) To be protected by the First Amendment, speech must not only be related to matters of public interest, but "the purpose of the expression must be to present such issues as matters of 'public' concern." Id. at 1382. Courts discern the purpose of the employee's speech by determining from the content, form, and context of a given statement "whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." Id.

Fagan contends his protected speech was advising Pollara that Fagan had been the initial officer on the scene, that the police report was a matter of public record, and that Pollara could request a copy of the police report through Florida's public records laws. (Doc. #1 at 3.) Fagan claims that Pollara obtained the police report and subsequently wrote a letter alleging police misconduct. (Doc. #1 at 3.) Fagan argues that "[i]n the instant

8

case, a cover-up would be a matter of public concern," but then explains that "[t]he only thing [Fagan] did was confirm he was aware of the incident since he ha[d] arrived first on the scene while the car was engulfed in flames, and then advise Mr. Pollara that he could request the police report through the public records act." (Doc. #24 at 10-11.)

By his own admission, Fagan's speech did <u>not</u> concern alleged police misconduct, but merely informed a citizen that a copy of a police report could be obtained through public records laws. Neither on the face of the complaint nor in Fagan's responses to the motions to dismiss is there any indication that the purpose in telling Pollara how to obtain a copy of the police report "was to bring to light any wrongdoing" or to do any more than advise a citizen of how to obtain public documents. See <u>Morris</u>, 142 F.3d at 1382. Such speech is more closely akin to speech occurring primarily in Fagan's role as employee, not as citizen, and as such does not qualify as speech on a matter of "public concern" protected by the First Amendment. Therefore, Fagan has failed to state a claim for a violation of his free speech rights under the First Amendment.

## B.   Freedom of Association

In addition to alleging violation of his free speech rights, Fagan also alleges violation of his First Amendment right to freedom of association. Fagan argues that his association with

9

Pollara, a former employer and convicted felon, is protected under the First Amendment.

"There exists two different forms of association which are granted special protection under the First Amendment: 'intimate association' and 'expressive association.'" McCabe v. Sharrett, 12 F.3d 1558, 1562-62 (11th Cir. 1994). In Roberts v. United States Jaycees, 468 U.S. 609 (1984), the Supreme Court explained that the right of intimate association—the freedom to enter into and maintain certain intimate human relationships such as marriage, childbirth, the raising and education of children and cohabitation with one's relatives—is protected from governmental intrusion as a fundamental aspect of personal liberty.   468 U.S. at 617-18; McCabe, 12 F.3d at 1563.  The right of expressive association, on the other hand, is the freedom to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.   Roberts, 468 U.S. at 618.  Fagan fails to specify whether his association with Pollara is allegedly protected as a right of intimate association or expressive association, and therefore this Court will examine both types of association.

1.   Intimate Association

In support of his assertion that he has a right to associate with Pollara, Fagan relies on Wilson v. Taylor, 733 F.2d 1539 (11th

Cir. 1984), in which the Eleventh Circuit found that a police officer's right to freedom of association was violated when his employment was terminated because he dated the daughter of a convicted felon. Id. at 1544. The Eleventh Circuit recognized, however, that Wilson was a "narrow holding" limited to dating situations and explained that the holding was not such that "a law enforcement officer may never be fired because of associations with others." Id. at 1544 n.3. Further, the Eleventh Circuit in Wilson declined "to render an advisory opinion on what conduct would be sufficient for termination of a police officer who associates with certain felons...." Id. Additionally, because Wilson did not use the Pickering balancing test and was decided before the Supreme Court decided Roberts, it is of limited precedential value.

More helpful, however, is the Eleventh Circuit's decision in Ross v. Clayton County, Ga., 173 F.3d 1305 (11th Cir. 1999). In Ross, a police officer who was living with his brother, an active probationer, was demoted according to a Georgia Department of Corrections rule prohibiting employees from maintaining personal association with known inmates, active probationers, or parolees. Id. at 1310. The court recognized that Ross's right to freedom of association, as stated in Roberts, encompasses cohabitation with one's relatives. Id. at 1311. However, after performing the Pickering balancing test, the court concluded that the scale tilted in favor of Clayton County because "[p]ersonal associations with

11

felons or active probationers could undermine appropriate objectives of a law enforcement agency." Id.

The right of intimate association encompasses personal relationships that "attend the creation and sustenance of a family." McCabe, 12 F.3d at 1563. "Whether the right extends to other relationships depends on the extent to which those attachments share the qualities distinctive to family relationships, such as 'relative smallness' and 'seclusion from others in critical aspects of the relationship.'" Id. (quoting Roberts, 468 U.S. at 620). Fagan describes his relationship with Pollara as merely that of a former employer, not a relationship resembling a family relationship, and therefore is not a relationship protected by the right of intimate association.

Unlike Ross, where the officer in question had a recognized right of intimate association to cohabitate with his brother, Fagan has no similar right to intimate association with his former employer, Pollara, and it is therefore unnecessary to perform a Pickering balancing test. Because Fagan has not alleged a relationship protected by the right to intimate association, he has failed to allege a violation of such right.

2. *Expressive Association*

The freedom of expressive association, that is, "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the

12

redress of grievances, and the exercise of religion," is protected by the First Amendment as a fundamental right. McCabe, 12 F.3d at 1563. Because the First Amendment's protection of freedom of expressive association is a "necessary corollary of the rights that the amendment protects by its terms," id., a plaintiff is entitled to special protection for expressive association where the "purpose of the association is to engage in activities independently protected by the First Amendment." Id.

As explained above, Fagan's statements to Pollara regarding Fagan's presence at the scene of the accident and concerning the possibility of obtaining the police report through public records law do not qualify as speech on a matter of "public concern" protected by the First Amendment. Because Fagan's statements are not independently protected by the First Amendment right to freedom of speech, the purpose of the association between Fagan and Pollara was not to "engage in activities independently protected by the First Amendment," McCabe, 12 F.3d at 1563, and therefore the association is not protected by the First Amendment right to freedom of expressive association. Because Fagan has no right to expressive association with Pollara when making the statements at issue here, it is unnecessary to perform a Pickering balancing test. Moreover, because Fagan has not alleged a relationship protected by the right to expressive association, he has failed to allege a violation of such right.

As Fagan's association with Pollara is neither a protected intimate association nor expressive association, Fagan has failed to state a claim for violation of his First Amendment right of freedom of association.

## IV.  CONCLUSION

Because Fagan has not stated a claim under 42 U.S.C. §1983 for violation of his First Amendment rights of either freedom of speech or freedom of expression, he has failed to allege a violation *any* constitutional right.   Where the plaintiff fails to allege a violation of any constitutional right, qualified immunity analysis is unnecessary.   See <u>Conn</u>, 526 U.S. at 290.   Consequently, the complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

1.    The Motion to Dismiss (Doc. #15) filed by Defendant City of Marco Island shall be **GRANTED**.

2.    The Motion to Dismiss (Doc. #16) filed by Defendants Moss and Reinke shall be **GRANTED**.

3.    The Clerk shall enter judgment accordingly and close the file.   The Clerk is further directed to terminate any previously

scheduled deadlines and pending motions.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this
15th day of July, 2005.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All parties of record